UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BERNARD SMITH,<br><br>               Petitioner,<br><br>v.<br><br>JAMES ABBOT WARDEN COLORADO DEPARTMENT OF CORRECTIONS CANNON CITY COLORADO,<br><br>               Respondent. | Case No.  C04-5767FDB<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>**July 15TH , 2005** |

    This Habeas Corpus Action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636 (b)(1)(B) and Local Magistrates' Rules MJR 3 and MJR 4. Petitioner in this action is seeking federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner challenges a 1998 Pierce County convictions for first and second degree assault. Petitioner was sentenced to190 months, 130 months for the two crimes and 60 months weapons enhancement.  (Dkt. # 19, page 1).

    The respondent has answered the petition and shows the issues raised to be unexhausted. (Dkt. # 19 and 20).  The petition is ripe for review.

FACTS

    The Washington State Court of Appeals summarized the facts surrounding the crimes as

REPORT AND RECOMMENDATION Page - 1

follows:

The State charged Smith by amended information with the first degree and second degree assault of Erik Dias and alleged that Smith was armed with a handgun during both assaults. At trial, Smith, Dias, and several of the law enforcement officers who responded to or investigated the incident testified.

Both Smith and Dias testified that they first met on April 16, 1998, in the parking lot of a club they both frequented in the Kent/Auburn area after Smith had allegedly bumped Dias's car with his car door. Dias testified that he was upset because Smith did not stop to apologize and that Smith was confrontational and aggressive during their encounter. Smith testified that Dias displayed a gun when he confronted him about bumping his car and that Dias was the aggressive party during this confrontation. Dias admitted that he was carrying a gun that night, but he testified that he did not display the gun and that is[sic] was in a hip holster and covered by his coat during his interaction with Smith that night.

Two weeks later, on the night of April 30, Dias returned to the club. Although Smith testified that he was also at the club and saw Dias there, Dias did not see Smith.

Dias testified that he was on his way home from the club around 2:00 a.m. on May 1, when he noticed that a car appeared to be following him as he drove south on I-5 toward his home in University Place. Although he was not initially too concerned about this, he became more concerned when the car followed him from I-5 on to Highway 16 and then started to pull up beside him in the left hand lane.

Dias then sped up and took the Fircrest exit without signaling. The other car abruptly followed him off the exit, coming so close to Dias's car that he was afraid it would run him off the road. At this point, Dias became even more concerned, so he took his gun and put it on his lap.

After exiting the highway, Dias drove toward an area that he knew the police often patrolled and started to speed in an attempt to draw an officer's attention. When he failed to come across any police officers, Dias became "extremely nervous" and, not wanting the person who was following him to know where he lived, decided to confront the person. . . . Dias testified that although had no reason to suspect that anyone would want to shoot him, he was "concerned about [his] general safety."

Dias then turned into a dead-end road; slammed on his brake; shut off his lights; grabbed his gun in his left hand; exited his car; and turned toward the other car, which had stopped behind him. But he testified that he was careful not to expose his gun and that he kept it out of sight behind the driver's seat.

Although Dias could not see anyone inside the other car, he noticed that the car's door was ajar and saw a figure near the door; he then saw what appeared to be three muzzle flashes and realized he was being shot at. Dias's right leg then collapsed under him. As he fell, he shot toward the other driver; he kept firing until he had emptied his gun. While he was shooting, he heard the other person continue to shoot. After the firing stopped, he heard footsteps coming toward him.

When he heard the person say, "Nigger, you fucking think I forgot what happened two weeks ago. You thought I fucking forgot. You better hope I don't fucking kill you," he recognized Smith's voice. . . . Smith then stood over him, still holding his gun.

REPORT AND RECOMMENDATION Page - 2

Dias testified that he did not know how many shots Smith had fired and that he was afraid that Smith would shoot him in the head, so he reached up and grabbed Smith's gun. Smith in turn grabbed Dias's gun, and the two men struggled over the weapons, Smith began kicking Dias, threatened to kill Dias if he did not release the guns, and eventually wrested [sic] one of the guns from Dias's hand and hit Dias in the head with it. Dias let go of the other gun in an attempt to cover his head. Smith hit Dias in the head several more times, then took both guns, removed the keys from Dias's car, and left the scene.

After Smith left, Dias called 911 on his cell phone; the police arrived before he finished placing the call. During the fire fight, Dias had been shot once in his foot, once in his hip, twice in his abdomen. Officers eventually located Smith at a hospital in Federal Way where he sought treatment for a gunshot wound to his arm.

At trial, Smith admitted that he followed Dias from the club and that he may have unintentionally driven fairly close to Dias on the Fircrest exit. But he denied driving aggressively or attempting to run Dias off the road and asserted that, although he had contemplated breaking out Dias's car windows, he had not intended to assault Dias that night. He further testified that after Dias stopped, Dias approached his car with his gun drawn and fired the first shots. He contended that he shot back only in self-defense.

Smith also admitted that he returned to Dias after he believed Dias's gun was empty and attempted to take his gun. He further admitted to struggling with Dias over the guns, threatening to kill him if he did not release the guns, and then hitting Dias in the head twice to get him to release one of the guns.

(Dkt. # 20, Exhibit 3).

## PROCEDURAL HISTORY

Petitioner was convicted after a jury trial and appealed to the Washington State Court of Appeals. On direct appeal he raised the following issues:

**I. ASSIGNMENTS OF ERROR**

    1.    The trial court erred in giving an aggressor instruction to the jury. (Assignment of Error No. 1).

    2.    There was insufficient evidence to convict Mr. Smith of assault. (Assignment of Error No. 2).

**II. ISSUES PRESENTED**

    1.    Was it improper for the trial court to give the jury an aggressor instruction when Mr. Smith had driven behind Mr. Dias' vehicle, but had not displayed any aggressive driving behavior; Mr. Dias testified that he did not believe that he was in any imminent danger; and the State produced no evidence tending to show that Mr. Smith acted intentionally to provoke Mr. Dias? (Assignment of Error No. 1) .

    2.    Was the evidence insufficient to convict Mr. Smith of two counts of assault where he had driven behind Mr. Dias, but had

REPORT AND RECOMMENDATION Page - 3

not displayed any aggressive behavior; Mr. Dias testified twice that he did not believe that he was in any imminent danger; Mr. Smith fired upon Mr. Dias after Mr. Dias opened fire on him; Mr. Smith struck Mr. Dias in order to take Mr. Dias' gun away after Mr. Dias fired on him; and Mr. Smith had no intent to harm Mr. Dias? (Assignment of Error No. 2).

    A.    THE COURT ERRED IN GIVING AN AGGRESSOR INSTRUCTION BECAUSE IT WAS NOT SUPPORTED BY THE EVIDENCE AND IT DEPRIVED MR. SMITH OF HIS DUE PROCESS RIGHT TO PRESENT A SELF-DEFENSE CLAIM.

(Dkt. # 20, Exhibit 2, pages 1 and 2).

The Washington State Court of Appeals affirmed the conviction and sentence. Petitioner moved for discretionary review and presented the following issues:

C. ISSUE PRESENTED FOR REVIEW

    A.    Mr. Smith was denied effective assistance of counsel through his attorney for not cross examination of witnesses.

    B.    The court erred in giving an aggressor instruction, because it was not supported by the evidence and it deprived Mr. Smith of his due process right to present a self-defense claim.

(Dkt. # 20, Exhibit 4, at 2).

The Washington State Supreme Court denied review September 8th, 2004 ending the direct challenge to the conviction and sentence and commencing the running Washington State's one year statute of limitations for filing a collateral challenge. *See*, RCW 10.73.090.

Petitioner did not file a state collateral challenge and instead filed this federal petition. He raises the following issues:

    A.    There was insufficient evidence on which to convict Mr. Smith for assault, because the state failed to negate his claims of self-defense.

    B.    Trial counsel failed to consult with an expert in crime investigation or ballistics. Counsel fail [sic] to conduct cross-examination Tammy Guerra, George Laver, James McDonough. Trial counsel could have properly handled the deficient crime scene investigation by competently cross-examining the State witness or by retaining an expert.

(Dkt. # 6, pages 2 and 3).

## STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the

REPORT AND RECOMMENDATION Page - 4

merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Further, a determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## EVIDENTIARY HEARING

If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary hearing may not be held unless (A) the claim relies on (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense. 28 U.S.C. §2254(e)(2) (1996).

Petitioner's claims rely on established rules of constitutional law. Further, petitioner has not set forth any factual basis for his claims that could not have been previously discovered by due diligence. Given the record in this case, the facts underlying petitioner's claims are insufficient to establish that no rational fact finder would have found him guilty of the crime. Therefore, petitioner is not entitled to an evidentiary hearing. The court concludes that the Washington State Court of Appeals and the State Supreme Court did not err in denying petitioner an evidentiary hearing.

## DISCUSSION

Exhaustion.

The Court first considers whether the issues raise in this petition have been properly exhausted. In order to satisfy the exhaustion requirement, petitioner's claims must have been fairly presented to the state's highest court. Picard v. Connor, 404 U.S. 270, 276 (1971); Middleton v. Cupp, 768 F.2d 1083, 1086 (9th Cir. 1985). A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of prisoners' federal rights. Duncan v.

REPORT AND RECOMMENDATION Page - 5

Henry, --- U.S. ---, 115 S.Ct. 887, 888 (1995).  It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state law claim was made.  Id, *citing* Picard v. Connor, 404 U.S. 270 (1971) and Anderson v. Harless, 459 U.S. 4 (1982).  Further, the petitioner must raise his claims at every level of state review.  Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992); Baldwin v. Reese, 541 U.S. 27 (2004).

There was no ineffective assistance of counsel claim on direct appeal to the Washington State Court of Appeals.  (Dkt. # 20 , Exhibit 2).  Petitioner argued jury instructions and insufficient evidence.  In petitioner's motion for discretionary review to the Washington State Supreme Court petitioner raised an ineffective assistance of counsel claim for the first time and argued counsel was not effective for not cross examining witnesses.  He also raised jury instructions as an issue.  There was no insufficient evidence claim except for the argument that the evidence does not support a instruction given.  (Dkt. # 20, Exhibit 4).

Now, at the federal level,  petitioner raises an ineffective assistance of counsel claim not just for the alleged failure to cross examine witnesses, but also for failure to hire an expert, failure to investigate the crime scene, and failure to cross examination of witnesses.  Even if this claim was identical to the claim at the State Supreme Court level the claim would not be exhausted.  It would not be exhausted because this claim was never before the State Court of Appeals.  The petitioner must raise his claims at every level of state review.  Ortberg v. Moody, 961 F.2d 135, 138 (9th Cir. 1992); Baldwin v. Reese, 541 U.S. 27 (2004).   Petitioner also raises an insufficient evidence claim that is  a claim separate and apart from his jury instructions claim.  This claim was not before the State Supreme Court.

The claims in this petition were not presented at all levels of review and are therefore unexhausted.  Petitioner appears to have until September 8th, 2005 to file a collateral challenge and this petition should be **DISMISSED WITHOUT PREJUDICE**.

## CONCLUSION

This petition is unexhausted and should be **DISMISSED WITHOUT PREJUDICE.**  A proposed order and proposed judgment accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the

REPORT AND RECOMMENDATION Page - 6

1 parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.
2 R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of
3 appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule
4 72(b), the clerk is directed to set the matter for consideration on **July 15th 2005**, as noted in
5 the caption.

7      DATED this 17th day of June, 2005.

9                                         */S/ J. Kelley Arnold*
                                          J. Kelley Arnold
10                                        United States Magistrate Judge

REPORT AND RECOMMENDATION Page - 7